**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

**MARKIBA JOHNSON, RICK ABBOTT,**
**TIMOTHY DEAL, JAMES HALL, JUAN LERMA**
**TREVOR POWELL, JIMMY BEELER, and**
**MICHAEL HARRIS**                                         **PLAINTIFFS**


**V.**                       **CASE NO. 4:09-CV-739 DPM**


**FRAC TECH SERVICES, LLC**                              **DEFENDANT**

## MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

## I.  INTRODUCTION

### 1.1.      Factual and Procedural Background.

Plaintiffs filed this action seeking compensation for unpaid overtime under the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.  On June 17 - 23, 2011, the parties presented their

cases to a jury.  On June 23, 2001, the jury returned a verdict in favor of seven plaintiffs, namely

Markiba Johnson, Rick Abbot, Timothy Deal, James Hall, Trevor Powell, Jimmy Beeler and

Michael Harris.  The jury returned a verdict in favor of Defendant as to one plaintiff, namely Juan

Lerma.  As prevailing parties, Plaintiffs Johnson, Abbot, Deal, Hall, Powell, Beeler and Harris are

entitled to an award of their attorneys' fees against Defendant pursuant to 29 U.S.C. § 216(b).

After the jury announced its verdict and was released, the Court instructed the parties to

"meet and confer" before the filing of Plaintiffs' fee petition to attempt to come to an agreement

regarding the reasonable amount of attorneys' fees to be paid to Plaintiffs by Defendant.  On Friday,

July 1, 2011, Plaintiffs' counsel forwarded via email to Defendant's counsel a Billing Statement

representing the fees for which Plaintiffs believe they are entitled to payment from the Defendant

pursuant to 29 U.S.C. § 216(b).  Since that date, Plaintiffs' have incurred additional attorneys' fees for time spent on this Motion, as well as issues pertaining to the outstanding Motion for Liquidated Damages, Motion to Compel filed by Defendant, and miscellaneous other items.  An updated Billing Statement current through July 7, 2011, is attached hereto.[1]  Plaintiffs' also included a Billing Statement from Sanford Law Firm, PLLC, for the work that firm performed on the case through the date of its withdrawal in March of 2010.[2]  As stated in the enclosure letter accompanying the Billing Statement, the Statement was edited by Plaintiffs' counsel to exclude "any duplicative biling as well as work performed relating to issues on which we were unsuccessful (such as Motions for Collective Action) and for time spent solely on the cases of plaintiffs who were later dismissed (such as Alonzo Flores and Antonio Aguilera)."[3]

Counsel for Defendant responded by requesting copies of Plaintiffs' counsels' fee agreements/contracts with each of the clients.  Plaintiffs maintain that Defendant is not entitled to these documents.  After multiple email exchanges between counsel for each of the parties, the parties met to confer on Thursday, July 7, 2011.[4]  The meeting was completely unproductive, as Defendant's counsel refused to engage in any discussion as to the reasonableness of Plaintiffs' attorneys' fees and costs as set out in the Billing Statement, continuing to assert that production of Plaintiffs' fee agreements/contracts was a "threshold issue."

---

[1] *See* Exhibit 1 attached hereto.

[2] *See* exhibit 2 attached hereto.

[3] *See* Exhibit 3 attached hereto.

[4] *See* Exhibit 4 attached hereto.

### 1.2.      The FLSA Fee-Shifting Provision.

In enacting the FLSA, Congress intended to rectify and eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers. . . ."[5]  To fully effectuate this goal, Congress included within the FLSA a fee-shifting provision, providing that "[t]he court in such [FLSA] action **shall**, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fees to be paid by the defendant, and costs of the action."[6]  Whereas under other fee-shifting statutes an award of attorneys' fees and costs to the prevailing party is provided at the discretion of the court, such an award to a prevailing plaintiff is mandatory under the FLSA.[7]

FLSA's fee-shifting provision, similar to those contained in other federal civil rights statutes, was intended to make the aggrieved employee whole "without incurring any expense for legal fees or costs."[8]  Indeed, Congress specifically included the fee-shifting provision in the FLSA to ensure that all non-exempt workers, regardless of hourly income levels, have access to the courts through representation by private attorneys.[9]

---

[5] 29 U.S.C. § 202(a).

[6] 29 U.S.C. § 216(b); *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

[7] *See* 29 U.S.C. § 216(b); *Pressler v. FTS USA, LLC*, 2011 U.S. Dist. LEXIS 62961 (E.D. Ark. June 2, 2011) (holding that the payment of attorney's fees to employees prevailing in FLSA cases is mandatory).

[8] *Maddrix v. Dize*, 153 F.2d 274, 275-276 (4th Cir. 1946).

[9] *See, e.g., United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 502 (6th Cir. 1984) (the purpose of the attorneys' fee shifting provision in the FLSA "is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances").  *See also Ayres v. 127 Restaurant Corp.*, No. 96-1255, 1999 U.S. Dist. LEXIS 7935, at *5 (S.D.N.Y. May 21, 1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation") (*citing Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2nd Cir. 1999)).

## II. __ARGUMENT__.

### 2.1.       Guiding Principles of Fee Determinations.

Under the FLSA, once plaintiffs are determined to be prevailing parties, the district court must award them their "reasonable" attorneys' fees and costs.[10]  Neither the FLSA nor its legislative history illuminates the meaning of "reasonable" as used in the FLSA's fee-shifting provision.  Case law makes clear that, although the district court has discretion to determine what is "reasonable," it nonetheless should compensate plaintiffs for the time spent on the litigation as if plaintiffs were fee-paying clients.[11]

The Supreme Court has established a framework and methodology for calculating the amount of reasonable attorneys' fees to award a prevailing party. The first step in the analysis is determining the "lodestar," which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.[12]  There is a strong presumption that prevailing lawyers are entitled to their lodestar fee in full.[13]  However, in calculating the lodestar fee, the prevailing party must exercise billing judgment to exclude from the fee request hours that are duplicative or otherwise unnecessary,

---

[10] 29 U.S.C. § 216(b); Burnley, 730 F.2d at 141.

[11] See, e.g., *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983) n.4 ("In computing the fee, counsel for prevailing parties should be paid…for all time reasonably expended on a matter") (internal quotation and citation omitted); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (FLSA plaintiff shall be compensated for all hours reasonably spent on the litigation).

[12] *Blum v. Stenson*, 465 U.S. 886, 888 (1985) ("The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate); *Saizan v. Delta Concrete Prod. Co.,Inc.*, 448 F.3d 795, 799 n.7 (5th Cir. 2006) ("Though the attorney's fee provision of the FLSA does not mention 'prevailing party,' we typically cite prevailing party fee-shifting jurisprudence in FLSA cases."); Lyle v. Food Lion Inc., 954 F.2d 984, 988 (4th Cir. 1992) (same).

[13] *See Lyle*, 954 F.3d at 988-989 (noting the "strong presumption" that the lodestar is a reasonable fee) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

and the district court likewise may exclude from the lodestar computation hours that it deems unreasonably spent on the litigation.[14]

The courts have also enumerated some factors that should **not** control the amount of fees awarded to the prevailing party.  In *Fegley v. Higgins*,[15] the Sixth Circuit stated that courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here "encourages the vindication of congressionally identified policies and rights."[16]  Similarly, in *Simpson v. Merchants & Planters Bank*,[17] the Eighth Circuit stated that the fee award need not be proportional to a plaintiff's damages award.[18]  Rather, the critical factor in determining the appropriate amount of a fee award to a prevailing plaintiff is "the degree of success obtained," with discretion residing in the District Court.[19]  Plaintiffs only pursued one claim in this case, a claim for unpaid overtime to which they are entitled under the FLSA.  It was on this claim that Plaintiffs succeeded and for which they now seek attorneys' fees.  There is no dispute that Plaintiffs prevailed in this action and are entitled to a reasonable award of attorneys' fees and costs.

### 2.2.  Plaintiffs' Counsel Have Exercised Billing Judgment.

The attorney for the prevailing party is expected to make "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."[20]  In doing so, counsel

---

[14] *Hensley*, 461 U.S. at 433-434.

[15] 19 F.3d 1126 (6th Cir. 1994).

[16] *Id* at 1134.

[17] 441 F.3d 572 (8th Cir. 2006).

[18] *Id* at 580-81.

[19] *Hensley*, 461 U.S. at 436-37.

[20] *Hensley*, 461 U.S. at 434.

should use the same "billing judgment" any lawyer in private practice is ethically obligated to exercise.[21] Here, Plaintiffs' counsel have already excluded all time exclusively devoted to Plaintiffs' failed Motions for Class Certification, as well as time spent exclusively pursuing the claims of plaintiffs who were later dismissed from this case (such as Claiborne Lee).  Specifically, Plaintiffs' counsel have deleted from $9,585.00 in billing entries from the statement of Sanford Law Firm, PLLC, and $28,347.00 from the statement of Holleman & Associates, P.A.

Although Plaintiffs' have removed the majority of the entries related to their unsuccessful Motion for Collective Action, Plaintiffs believe they are entitled to attorneys' fees for one issue that was litigated in those Motions; namely, the issue of the Motor Carrier Act Exemption.  In its Response to Plaintiff's Renewed Motion for Certification of Collective Action and Brief in Support thereof (Docs. 90 and 91), Defendant asserted that Plaintiffs were exempt from the provision of the FLSA based on the Motor Carrier Act Exemption.  The law regarding the applicability of the Motor Carrier Act Exemption is complicated and convoluted, as it has changed multiple times in a short number of years.  This issue required significant legal research and briefing by Plaintiffs' in their Reply (Doc. 94).  Defendant's ultimately abandoned this defense, and Plaintiffs should be compensated for time spent researching and briefing the issue.

### 2.3.    Plaintiffs' Fees are Reasonable and Were Necessarily Incurred.

In determining the reasonableness of fees, federal courts apply the twelve factors listed in *Hensley v. Eckerhart*.[22]  The Eighth Circuit has adopted the factors set forth in *Chrisco v. Sun Indus.,*

---

[21] *Id.*

[22] 461 U.S. 424, 433 (1983).

*Inc.*[23]  The factors are read as follows: (1) the experience and ability of counsel; (2) the time and labor required to perform the legal service properly; (3) the amount involved in the case and the results obtained; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged in the locality for similar services; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client or by the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.[24]

In FLSA cases, where the statute provides for mandatory payment of attorneys' fees to successful plaintiffs, court have held that the *Hensley* factors may be considered.  However, in practice, these eight factors become folded into a general analysis of the reasonableness of the time expended and the rate charged.

### A.    Plaintiffs' Counsels' Fee Agreements/Contracts With Their Clients Are Irrelevant to a Determination of the Reasonable Fees to be Awarded to Plaintiffs'.

As stated in the introduction herein, Defendant's counsel refused to participate in discussions as to the reasonableness of Plaintiffs' billing, maintaining that Defendant is entitled to Plaintiffs' fee agreements/contracts, and that until same are provided, no determination as to reasonableness can be made.  Plaintiffs strongly disagree.  Defendant's counsel has filed a Motion to Compel Plaintiffs' fee agreements/contracts.  Therefore, Plaintiffs feel it is necessary to address Defendant's assertion in this Brief.

Plaintiffs' fee agreements/contracts with their counsel are completely irrelevant to the determination of the reasonableness of Plaintiffs' counsels' billing.  The "contingent-fee model,

---

[23] 304 Ark. 227, 229-30, 800 S.W.2d 717, 718-19 (1990).

[24] *Id.*

premised on the award to an attorney of an amount representing a percentage of the damages, is . . . inappropriate for the determination of fees" in statutory fee cases.[25]  Accordingly, what a plaintiff might have agreed to pay is **not** the measure by which an award of "reasonable attorney fees" is judged.[26]  Indeed, the *Blanchard* Court ever stated that "[s]hould a fee agreement provide less than a reasonable fee calculate [according to the Johnson factors], **the defendant should nevertheless be required to pay the higher amount.**"[27]  A contingent fee contract should **not** be considered in determining reasonable fees, except for reasons that are not relevant here (*e.g.*, to establish counsel's right to represent the plaintiff).[28]

Nevertheless, in this statutory fee case, Defendant presumably seeks Plaintiffs' fee agreements/contracts to shape the terms of the fee.  However, because the terms of Plaintiffs' fee agreements/contracts will not govern the lodestar award of fees against Defendant, the fee agreements/contracts are irrelevant to this case.[29]  This is because the fee application in this matter will not be governed by the terms of the fee agreement but rather by the relevant *Chrisco* factors, which do not consider at all the fee contract between plaintiffs and counsel.  The *Blanchard* Court even highlighted that an attorney's contract with his client is not an important factor in a Court's calculation of a fee award:

> Fee awards are to be reasonable, <u>reasonable as to billing rates and reasonable as to the number of hours spent in advancing the</u>

---

[25] *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989).

[26] *Venegas v. Mitchel*, 495 U.S. 82, 89 (1990) (emphasis added).

[27] *Blanchard*, 489 U.S. at 93 (emphasis added).

[28] *Beck v. Northern Natural Gas Co.*, 170 F.3d 1018, 1024 (10th Cir. 1999).

[29] *See Blanchard*, 489 U.S. at 96; *Venegas*, 495 U.S. at 89.

successful claims.  Accordingly, fee awards, properly calculated, by definition will represent the reasonable worth of the services rendered in vindication of a plaintiffs' civil rights claim.  It is central to the awarding of attorney's fees under § 1988 that the district judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case.  The trial judge should not be limited by the contractual fee agreement between plaintiff and counsel.[30]

Although *Blanchard* addressed statutory attorneys' fees provided for in civil rights cases, the same logic is absolutely applicable to this case, where statutory attorneys' fees are provided for under the FLSA.  Similar public policies and congressional intent are at stake in the two scenarios.  In fact, Judge Keith Ellison in *Davis v. C. J. T. Enterprises, Inc. et al.*,[31] denied an employer's motion to compel the production of the fee agreement between the plaintiff and the plaintiff's counsel in an FLSA case where attorney's fees were sought.  This Court should do the same.

**B.**    **Plaintiffs' Counsels' Billing Statement Reflects Meticulous, Contemporaneous Time Records and Should Be Paid in Full.**

In order for a court to calculate the number of hours reasonably expended in a given case, the party seeking the fees must submit adequate documentation supporting the number of hours claimed.[32]  The *Hensley* Court stated that "[t]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates" and the applicant "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."[33]  The records need not contain "great detail" of how each minute is spent,

---

[30] *Blanchard*, 489 U.S. at 96.  (Emphasis added).

[31] Civil Action No. H-05-23 (SD Tex. April 25, 2006).

[32] *Hensley* 461 U.S. at 433.

[33] *Id* at 437.

but should at least identify the general subject matter on which the time was expended and assist the court in determining how much time was spent on particular claims.[34]

In this case, Plaintiffs' counsel have kept meticulous, contemporaneous time records, as set out in the Billing Statement attached hereto as Exhibit 1. The records go beyond identifying "the general subject matter on which the time was expended."[35] Plaintiffs' seek compensation for a total of $445,450.86 to date, broken down as follows:

$399,948.00        Attorneys' Fees for Holleman & Associates, P.A.
$ 11,851.61        Costs for Holleman & Associates, P.A.
$ 33,651.25        Attorneys' Fees for Sanford Law Firm, PLLC

Work on this case is on-going, and Plaintiffs' will continue to incur attorneys' fees until entry of the final judgment.

### C.      The Number of Hours Billed by Plaintiffs' Counsel is a Direct Reflection of the Effort Expended by Defendant in Defending this Case.

When a Defendant chooses to tenaciously litigate a case, then it cannot be heard to complain about the time spent by a plaintiff in prosecuting the plaintiff's claim.[36] Defendant in this case put up a hard fought defense, providing an enormous volume of discovery documents (over 33,000 pages),[37] listing literally hundreds of potential witnesses on multiple amended initial disclosure

---

[34] *Id* n.12.

[35] *Id*.

[36] *See City of Riverside v. Riviera*, 477 U.S. 561, 581 n.11 (1985) (noting a defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response).

[37] *See* Index attached hereto as Exhibit 5.

sheets and discovery responses,[38] and providing over 10,000 documents as exhibits to be used at trial less than 48 hours prior to the beginning of trial.[39]

Reviewing the discovery documents provided by Defendant in this case was a monumental task. As shown in the Index attached hereto as Exhibit 4, between May 26, 2010 and January 17, 2011, Defendant provided approximately 30 discs, with 1,493 separate files, and a total of 33,823 pages. For example, on July 21, 2010, Defendant sent via hand delivery, four separate letters, one signed by Mark Breeding and three signed by Sarah Greenwood, enclosing a total of nine separate discs containing several thousand documents.[40] The letters simply stated that the discs were to "serve as supplementation in both the *Smith* and *Johnson* cases,"[41] without giving any indication as to the contents of the discs, to which discovery requests the documents were responsive, to which plaintiff or plaintiffs the documents pertained, or even whether the documents pertained to plaintiffs in the *Smith* or *Johnson* case.[42] Plaintiffs had to open, print and review each and every page to determine what the documents were, to whom they pertained, and make their best guest as to which discovery request the documents were responsive. Moreover, many of the documents pertained to multiple plaintiffs, which required making photocopies of the documents for each plaintiffs file.

---

[38] *See* Exhibits 11-16 attached hereto.

[39] *See* Exhibit 6 attached hereto.

[40] *See* letters attached hereto as Exhibit 7.

[41] *Id*.

[42] Plaintiffs' counsel have not double-billed for the time spent reviewing these documents. Time spent reviewing the tens of thousands of documents identified by Defendant as supplementation for both cases was divided between the cases, with approximately half the time billed to this case, and approximately half the time billed to *Smith v. Frac Tech*.

To further complicate matters, on September 22, 2010, Plaintiffs' counsel received a letter from Defendant's counsel stating "I was operating under the assumption that all the documents produced and bates-stamped in *Smith v. Frac Tech* could also be used in *Johnson*.  Please let me know if that will not work and I will reproduce with all new bates-stamps marked with *Johnson v. Frac Tech*."[43]  Plaintiffs' did not believe the letter required a response, unless Plaintiffs' had an objection to Defendant's suggestion to use the documents in both cases.  However, on September 24, 2010, Plaintiffs' counsel received yet another letter from Defendant's counsel stating "[b]ecause I did not receive a response from you regarding my last letter attempting to confirm that all documents produced and bates-stamped in *Smith v. Frac Tech* could also be used in *Johnson*, I have gone ahead and reproduced them all with new bates-stamps marked with *Johnson v. Frac Tech*.  You have already received these documents, so this of course will be duplicative."[44]

The first column of the Index represents the name assigned to each of the 1,493 files saved to the discs.  The first two discs provided by the Defendant contained file names that explained what was contained in the file, *i.e.*, "johnson, Markiba pyroll records," and "abbott rick HR file - part 1." However, the 28 other discs that were provided contained file names that were a number.  Some of the numbers were the beginning bates number of the documents contained in the file, others were a two to four digit number appearing to be randomly assigned, and having no correlation to the documents in the file.  The attached screenprint from two discs delivered on September 24, 2010, is illustrative.[45]

---

[43] *See* Exhibit 8 attached hereto.

[44] *See* Exhibit 9 attached hereto.

[45] *See* printout attached hereto as Exhibit 10.

Determination of the witnesses and exhibits Defendant's intended to use at trial required similarly heroic efforts by Plaintiffs' counsel.  On November 10, 2009, Defendant submitted to Plaintiffs' its Initial Disclosures, listing the names of nine potential witnesses.[46]  On August 3, 2010, Defendant provided Supplemental Answers to Interrogatories and Request for Production of Documents listing a total 82 lay witnesses.[47]  On August 23, 2010, Defendant provided Supplemental Answers to Interrogatories and Request for Production of Documents listing a total of 89 lay witnesses.[48]   On September 22, 2010, Defendant again provided Supplemental Answers to Interrogatories and Request for Production of Documents, this time listing 231 lay witnesses.[49]  On September 27, 2010, Defendant supplemented its discovery responses yet again, this time listing 239 lay witnesses.[50]   Finally, on January 17, 2011, Defendant provided Second Amended Initial Disclosures, listing a total of 246 individuals as people likely to have discoverable information.[51]

Each time Defendant supplemented with additional names, Plaintiffs had to spend time comparing the new list to previous lists to determine the new witnesses listed by Defendant, and then to attempt to determine the knowledge these individuals may have, as Defendant did not provide this information.  Plaintiffs had to decide whether to contact any of these witnesses, and if so, which of the hundreds listed to contact.  This was made particularly difficult given the fact that Defendant listed as the address and phone number of virtually all of the witnesses Frac Tech's corporate address

---

[46] *See* Exhibit 11 attached hereto.

[47] *See* Exhibit 12 attached hereto.

[48] *See* Exhibit 13 attached hereto.

[49] *See* Exhibit 14 attached hereto.

[50] *See* Exhibit 15 attached hereto.

[51] *See* Exhibit 16 attached hereto.

and phone number.  Despite listing a total of 246 witnesses, Defendant called only seven individuals to testify at trial.  Plaintiff acknowledges that the actual number of witnesses used by Defendant at trial was cut somewhat by Plaintiffs' decision to dismiss two individual plaintiffs on the eve of trial. However, by Plaintiffs best estimate this accounts for at most five to ten witness.

As this Court is already aware, less than 48 hours before the beginning of the trial, Defendant provided to Plaintiffs' counsel a disc containing over 10,000 documents purporting to be the documents it intended to use as Exhibits at trial.  Many of the documents listed as Defendant's exhibits were completely irrelevant to the remaining claims of the remaining plaintiffs, excluded by the Motion in Limine, or even excluded by previous agreement of the parties (*i.e.*, deposition of Adrian Druba).  Per this Court's instructions at the hearing on June 17, 2011, the parties worked all weekend on Defendant's exhibits.  Plaintiffs' counsel met with Defendant's counsel on the evening of Friday, June 17, 2011, to attempt to come to an agreement regarding the documents Defendant truly intended to introduce at trial.  On Saturday, June 18, 2011, Defendant's counsel emailed a revised list, indicating those documents it truly intended to introduce at trial.  Plaintiffs' counsel worked the remainder of the weekend reviewing those documents in preparation for trial on Monday, June 20, 2011.

> **D.      Plaintiffs' Should be Compensated for Time Expended on the Motion for Partial Summary Judgment of the Conway Plaintiffs.**

Plaintiffs are asking this Court to compensate them for the time spent on the Motion for Partial Summary Judgment as to Markiba Johnson, Timothy Deal, and Richard Pearson (Docs. 125, 126, 127 and 134).  Although this Court denied that Motion, Plaintiffs ultimately prevailed on the claims of Markiba Johnson and Timothy Deal and trial.  The question is not whether a party

14

prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.[52]  Plaintiffs assert that the time expenditure on the Motion for Partial Summary Judgment was reasonable in hindsight, given the ultimate success achieved on these claims.

Although Plaintiffs did not pursue the claims of Richard Pearson at trial, the section of the Motion dealing solely with Mr. Pearson was minimal.  Moreover, Mr. Pearson's claims were so interrelated with the successful claims of the other Conway Plaintiffs that the work expended on the unsuccessful claim of Richard Pearson was reasonably expended in pursuit of success on the remaining claims.  The claims of all three of the individuals required the same proof, as they worked for the same District Manager, and under the same policies in force at the Conway yard.

### 2.4.    The Hourly Rate Sought by Plaintiffs' Counsel is Reasonable and Supported by Competent Evidence.

Typically, a reasonable hourly rate is the ordinary rate for similar work in the community where the case has been litigated.[53]  "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[54]

---

[52] *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).

[53] *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001); *Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002).

[54] *Blum v. Stenson*, 465 U.S. 886, 900 n.11 (1984).

In this case, Plaintiffs were initially represented by two law firms, Holleman and Associates, P.A. and Sanford Law Firm, PLLC.  Sanford Law Firm, PLLC performed work on this case until its withdrawal on March 18, 2010 (Doc. 81).

Holleman and Associates, P.A., billing records consist of entries for John T. Holleman, his various associates, and support staff.  Sanford Law Firm, PLLC billing records consist of entries for Josh Sanford, his former associate Amber Schubert, and support staff.  Plaintiffs' counsel are seasoned and experienced attorneys who have experience in handling employment cases, and FLSA cases in particular.  The rates charged by Plaintiffs' counsel are similar to the rates for comparably experienced employment law attorneys in Little Rock, Arkansas.

In FLSA cases, Mr. Holleman's reasonable hourly rate is $275.00 per hour.[55]  His associates' hourly rates are $175.00 per hour.  As the Court is aware, Mrs. Maryna Jackson was one of the associates who performed some work in this case.  Mrs. Jackson is an attorney with over twelve (12) years of experience in business litigation, international law, and complex litigation matters.  She has been an employee of Holleman & Associates, P. A. since 2009.  Prior to that Mrs. Jackson was the head of the legal department at the Zaporozhye's Branch of Ukrisibbank for approximately four years.  Mrs. Jackson's hourly rate in the FLSA cases is $175.00 per hour.

Ms. Amber Schubert initially performed work in this case as an associate for Sanford Law Firm, PLLC.  After Mr. Sanford's withdrawal from this case, Holleman and Associates, P.A. retained Ms. Schubert as an independent contractor.  Ms. Schubert continued to work on this case as an independent contractor until February of 2011, when she became associate at Holleman and

---

[55] Affidavit of John T. Holleman, is attached hereto as Exhibit 17.

16

Associates, P.A.  Ms. Schubert has performed a significant amount of work in this case since the beginning of litigation through the trial.  At all times, Ms. Schubert's hourly rate was $175.00 per hour.

At different times, Holleman and Associates, P.A. employed Chris Madison and Stephanie Linam as associates.  They both performed some work in this case, as reflected in the Plaintiffs' billing records under the column labeled "attorney M".  This column reflects Mr. Madison's billing from  the beginning of the case through January of 2009, and Mrs. Linam's billing from January of 2009 through March of 2010.  From March 18, 2010 through the end of February of 2011, the column reflects the work of Ms. Schubert as independent contractor for Holleman and Associates, P.A.  From March 1, 2011, through the present, the column reflects the work of Ms. Schubert as an associate with Holleman and Associates, P.A.  As stated above, Mr. Madison and Mrs. Linam's hourly rates were $175.00 per hour.

The reasonable hourly rate of Josh Sanford is $225.00 per hour.  Mr. Sanford is an attorney with over ten (10) years of experience, and has experience in handling employment cases, and FLSA cases in particular.  Mr. Sanford manages his own law firm and handles hundreds of cases each year. In 2005, Mr. Sanford was voted "Best Attorney" (tie) in a readers' poll published by The Courier in Russellville, Arkansas.  Subsequently, in 2008, Mr. Sanford served as the President of the Pope County Bar Association.  Mr. Sanford's hourly rate is reasonable and supported by evidence in this case.

Both firms charged $100.00 and $75.00 per hour for the work performed by paralegals.  The requested hourly rates are fair and reasonable for a firm of this experience and expertise.  Holleman and Associates, P.A. had its fee petitions granted in the following cases, with the listed rates: *Hall*

17

*et al vs. Arrington* - U. S. District Court Case No. 2-09-CV-0091 (Holleman's Rate $275, Associates at $225 and $175 and support staff at $100 and $75); *Smith et al vs. Arrington* - U. S. District Court Case No. 2-09-CV-0101 (Holleman's Rate $275, Associates at $225 and $175 and support staff at $100 and $75); *and Foster et al vs. Arrington* - U. S. District Court Case No. 2-09-CV-0147 (Holleman's Rate $275, Associates at $225 and $175 and support staff at $100 and $75).

The Plaintiffs have attached the following Affidavits in support of this attorneys' fee request:

    (a)    Exhibit 18:  Affidavit of Bobby McDaniel;

    (b)    Exhibit 19:  Affidavit of Brian Brooks;

    (c)    Exhibit 20:  Affidavit of David Williams;

    (d)    Exhibit 21:  Affidavit of Lloyd W. "Tre" Kitchens;

    (e)    Exhibit 17:  Affidavit of John T. Holleman.

## 2.5.       COSTS

Pursuant to Fed. R. Civ. P. 54(d)(1), a prevailing parting shall be allowed costs, other than attorneys fees, unless otherwise directed by the Court or unless a federal statute or other rules provide for costs.  Rule 54(d), "codifies the presumption that ... costs will be awarded to prevailing parties.[56]  28 U.S.C. §1920 defines the expenses that may be taxed as costs under Rules 54(d)(1) which include: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the

---

[56] *GeoVera v. Graham, supra note* 1 at 7; *Greaser v.* State, 145 F.3d 979 (8th Circle. 1998); *Bathke v. Casey's General Stores, Inc.*, 64 F.3d 340, 347 (8th Circle. 1995); *Police Retirement Sys. v. Midwest Involvement. Advisory Serv.*, 940 F.2d 351, 358-59 (8th Circle. 1991).

copies are necessarily obtained for use in the case; (5) Docket fees under §1923 of this title; and (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under §1828 of this title.

In order to rebut the presumption that the prevailing party is entitle to recover all of its costs, the District Court must provide a rationale for denying the prevailing party's claim for costs.[57] When an expense is taxable as a cost...there is a strong presumption that a prevailing party shall recover it "in full measure."[58]

The costs expended by Plaintiffs in pursuing this matter are 11,851.61 to date (and growing) as outlined in the Billing Statement attached hereto as Exhibit 1.

## III.   **CONCLUSION**

Plaintiffs have devoted a substantial amount of time to the prosecution of this case, in large part because of the aggressive defense mounted by Defendant.  This litigation has been on-going for nearly two years, with very little idle time.  In fact, Plaintiffs' counsel cannot recall a case (excluding the *Smith v. Frac Tech* case currently pending against the same Defendant as the instant case) that subsumed as much of his time as this case.  Defendant argued novel and complex issues such as the Motor Carrier Act Exemption, which required significant research and briefing by Plaintiffs.  Plaintiffs tried the case to a jury, which required extensive preparation and skill.  Plaintiffs asserted only one claim in this case: a claim for unpaid overtime under the FLSA.  Seven of the eight Plaintiffs who proceeded to trial succeeded on their claims.

---

[57] *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Circle. 1997); *accord Fireman's Fund Insurance. Co. v. Tropical Shipping & Const. Co.*, 254 F.3d 987, 1012 (1012 Cir. 2001); *Ass'n of Mexican American Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000)("A district court must 'specify reasons' for its refusal to award costs." (citations omitted)); *Cantrell v. Int'l Bhd. Of Elec. Workers, Local 2021*, 69 F.3d 456, 459 (10th Cir. 1995).

[58] *Id.* at 498 (*citing In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462, 468 (3rd Cir. 2000).

The Plaintiffs have won a substantial victory.   In consideration of the facts and circumstances, applicable law, and arguments presented herein, the Plaintiffs ask this Court to award:

(a)     attorneys fees to Holleman and Associates, P.A. in the amount of $399,948.00 (to date and growing);

(b)     costs to Holleman and Associates, P.A., in the amount of $11,851.61 (to date and growing); and

(c)     attorneys fees to Sanford Law Firm, PLLC, in the amount of $33,651.25.

The Plaintiffs further ask for leave of Court to submit an additional attorneys' fees request for the preparation of this memorandum and motion, and defense of post trial motions.

**WHEREFORE**, Plaintiffs pray that this Court grant their *Motion* and award the Plaintiffs attorneys' fees and costs, and for all other just and proper relief to which they may be entitled.

<div style="margin-left:40%">

Respectfully submitted,
HOLLEMAN & ASSOCIATES, P.A.
200 West Capitol Avenue, Suite 1620
Little Rock, AR 72201
Telephone: (501) 975-5040
Facsimile:  (501) 975-5043

By:     /s/ John T. Holleman
        John T. Holleman, ABN 91056
        jholleman@johnholleman.net
        Maryna O. Jackson, ABN 2009111
        maryna@johnholleman.net
        Amber R. Schubert, ABN 2009150
        amber@johnholleman.net

</div>

## <u>CERTIFICATE OF SERVICE</u>

       I, John T. Holleman, hereby certify that a true and correct copy of the foregoing document was filed via the CM/ECF system, this the 8th day of July, 2011, and that the foregoing shall send notification of such filing to the following:

Sarah Greenwood, sarah.greenwood@hmrmlaw.com

Bruce Munson, bruce.munson@hmrmlaw.com

Ashleigh Dale Phillips, ashleigh.phillips@hmrmlaw.com

Mark Steven Breeding mark.breeding@hmrmlaw.com

Jane Marie Yocum jane.yocum@hmrmlaw.com


                By:      /s/ John T. Holleman            
                       John T. Holleman